UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KATHERINE PHILLIPS,<br><br>                         Plaintiff,<br><br>v.<br><br>HEALTHCARE RESOURCES MEDICAL ASSOCIATES, INC., et al.,<br><br>                         Defendants. | Case No.:  24-CV-2071 JLS (DEB)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR PARTIAL DISMISSAL OF PLAINTIFF'S SECOND AMENDED COMPLAINT**<br><br>(ECF No. 32) |

Presently before the Court is Defendants Healthcare Resources Medical Associates, Inc.'s, Spectrum Healthcare Resources, Inc.'s, Rachael Hearn Grove's, and Crystal Curry's (collectively, "Defendants") Motion for Partial Dismissal of Plaintiff's Second Amended Complaint ("Mot.," ECF No. 32).  Also before the Court is Plaintiff Katherine Phillips's Response in Opposition to Defendants' Motion for Partial Dismissal of Plaintiff's Second Amended Complaint ("Opp'n," ECF No. 35), and Defendants' Reply to Opposition to Motion for Partial Dismissal of Plaintiff's Second Amended Complaint ("Reply," ECF No. 36).  After reviewing Plaintiff's Second Amended Complaint ("SAC," ECF No. 27), the Parties' arguments, and the relevant law, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion (ECF No. 32).

/ / /

## BACKGROUND

Plaintiff was employed by Defendants for approximately one year as a chiropractor. SAC ¶¶ 10(a)–(b).  Plaintiff alleges that she suffered discrimination based on a disability and was wrongfully terminated from her employment because of her disability.  *Id.* at 6. Plaintiff's allegations surround two purported disabilities: (1) "pain and discomfort" in her wrists, arms, shoulders, and neck due to a "lack of proper chiropractic equipment" and a small workspace which "forced her to modify the way she typically adjusted her patients," *id.* ¶¶ 11(a)–12(a), and (2) "migraine headaches" with "photophobia and phonophobia during her migraines, caused by the loud music and discomforting lights used throughout the facility," *id.* ¶ 16(a).  Plaintiff repeatedly complained about these conditions, requested accommodations, which were denied, attended many meetings with management, and was eventually terminated.  *See generally id.*

Plaintiff brings ten causes of action: (1) discrimination in violation of the Fair Employment and Housing Act ("FEHA"), (2) hostile work environment harassment, (3) retaliation, (4) failure to accommodate disability, (5) failure to engage in the interactive process, (6) failing to take all reasonable steps to prevent discrimination, harassment, and retaliation, (7) violation of Labor Code § 1102.5 (whistleblower retaliation), (8) violation of Labor Code § 232.5 (retaliation for reporting working conditions), (9) wrongful termination, and (10) intentional infliction of emotional distress ("IIED").  *See generally* SAC.  Defendants bring the present motion arguing that Plaintiff has failed to allege what medical condition constitutes the disability at issue—thus requiring dismissal of her First, Second, Fourth, Fifth, Sixth, and Ninth causes of action.  *See generally* Mot.  Defendants also argue that Plaintiff fails to sufficiently allege IIED—thus requiring dismissal of the Tenth cause of action.

/ / /

/ / /

/ / /

/ / /

24-CV-2071 JLS (DEB)

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) permits a party to raise by motion the defense that the complaint "fail[s] to state a claim upon which relief can be granted." To survive a 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the facts pled "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. That is not to say that the claim must be probable, but there must be "more than a sheer possibility that a defendant has acted unlawfully." *Id*. Facts "'merely consistent with' a defendant's liability" fall short of a plausible entitlement to relief. *Id*. (quoting *Twombly*, 550 U.S. at 557). Though this plausibility standard "does not require 'detailed factual allegations,' . . . it [does] demand[] more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id*. (quoting *Twombly*, 550 U.S. at 555). In other words, a complaint will not suffice "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id*. (alteration in original) (quoting *Twombly*, 550 U.S. at 557). Put differently, "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

Review under Rule 12(b)(6) requires a context-specific analysis involving the Court's "judicial experience and common sense." *Iqbal*, 556 U.S. at 679. In performing that analysis, "a district court must accept as true all facts alleged in the complaint, and draw all reasonable inferences in favor of the plaintiff." *Wi-LAN Inc. v. LG Elecs., Inc.*, 382 F. Supp. 3d 1012, 1020 (S.D. Cal. 2019). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (second alternation in original). If a complaint does not survive Rule 12(b)(6), a court grants leave to amend unless it determines that no modified contention "consistent with the challenged pleading could . . . possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986).

**DISCUSSION**

**I.    Disability Under FEHA**

Defendants first argue that Plaintiff "fails to plead with specificity the disability she suffered from" and that any alleged disability fails to "constitute[] a disability under . . . FEHA." Mot. at 17.

"To establish disability discrimination under FEHA, Plaintiff must assert sufficient facts to state a plausible claim that [she] '(1) suffered from a disability, or was regarded as suffering from a disability, (2) could perform the essential duties of the job with or without reasonable accommodations, and (3) was subjected to an adverse employment action because of the disability or perceived disability.'" *Padro v. Ferring Pharms., Inc.*, No. 25-CV-369-SSS-SPX, 2025 WL 4058222, at \*2 (C.D. Cal. Dec. 18, 2025) (quoting *Wills v. Superior Ct.*, 195 Cal. App. 4th 143, 159–60 (2011)).  A "physical disability" under FEHA "includes, but is not limited to, . . . any physiological disease, disorder [or] condition" that affects a major body system and "[l]imits a major life activity" by "mak[ing] the achievement of the major life activity difficult." Cal. Gov. Code §§ 12926(m)(1)(A)–(B). Major life activities are "broadly construed" and include "physical, mental, and social activities and working." *Cabrales v. Aerotek, Inc.*, No. EDCV 17-1531 JGB (KKx), 2019 WL 12374001, at \*12 (C.D. Cal. Jan. 9, 2019) (quoting § 12926(m)(1)(B)(iii)).  California regulations note that "[m]ajor life activities include, but are not limited to, sleeping, . . . standing, sitting, . . . lifting, . . . bending, . . . concentrating, thinking, . . . interacting with others, and working." Cal. Code Regs. § 11065(l)(1).  "Under FEHA, not every illness qualifies as a disability." *Cabrales*, 2019 WL 12374001, at \*13 (citing *Avila v. Cont'l Airlines, Inc.*, 165 Cal. App. 4th 1237, 1249 (2008)).  "And simply having pain alone does not constitute a disability." *Id.* (citing *Arteaga v. Brink's, Inc.*, 163 Cal App. 4th 327, 348 (2008)).  "However, short term conditions that do limit a major life activity qualify for protection." *Id.* (citing *Diaz v. Fed. Express Corp.*, 373 F. Supp. 2d 1034, 1051–53 (C.D. Cal. 2005)).

/ / /

24-CV-2071 JLS (DEB)

In the Order dismissing Plaintiff's First Amended Complaint ("Order," ECF No. 21), Judge Anello[1] found that Plaintiff failed "to adequately explain what 'physical limitations' she suffer[ed] from, or that [those] limitations amount[ed] to a disability as defined by FEHA." Order at 2. Judge Anello reasoned that the headaches, migraines, and frequent urination "as pleaded, were caused by loud music or fumigation of the facility," and while it is possible that temporary conditions are actionable, Plaintiff failed to plausibly plead that these "actually limited a major life activity or negatively impacted her ability to work." *Id.* (citing *Diaz*, 373 F. Supp. 2d at 1051–53). Regarding Plaintiff's pain in her wrists, arms, shoulders, and neck, Judge Anello found that Plaintiff failed to plausibly allege that these "interfered with her ability to perform her job." *Id.* (citing *Leatherbury v. C & H Sugar Co., Inc.*, 911 F. Supp. 2d 872, 880 (N.D. Cal. 2012) ("Although pain can be a disability under FEHA it must actually limit the employee's ability to work.")). The Court now finds that Plaintiff has sufficiently alleged that her migraines and pain in her wrists, arms, shoulders, and neck interfered with her ability to perform her job.

Regarding Plaintiff's allegations concerning headaches and migraines, the Court agrees with Defendants that ordinary headaches are not actionable under FEHA. *See Cabrales*, 2019 WL 12374001, at *12 ("California regulations expressly exclude non-migraine headaches.") (citing Cal. Code Regs. § 11065(d)(9)(B)). Thus, Defendants' Motion is **GRANTED** regarding any allegations concerning non-migraine headaches. However, Plaintiff has sufficiently pled that she suffered from migraines and that these migraines "actually limited a major life activity or negatively impacted her ability to work."[2] *See* Order at 2.

---

[1] This matter was reassigned to Judge Sammartino on December 10, 2025. ECF No. 43.

[2] Defendants rely on *Ellis v. City of Reedley*, No. CV F 05-1474 AWI SMS, 2007 WL 1098571, at *11 (E.D. Cal. Apr. 12, 2007) for the proposition that "infrequent migraine headaches" cannot constitute a disability under FEHA. This case is distinguishable because in *Ellis* the plaintiff merely alleged one instance of a migraine leading to his termination and a general "susceptibility to migraine headaches." *Id.* Here, Plaintiff alleges migraine issues over the course of several months and that she received a doctor's note stating she has migraines. SAC ¶ 16(a).

24-CV-2071 JLS (DEB)

Plaintiff alleges that, beginning on or around July 15, 2022, Plaintiff was suffering from migraines and was "unable to concentrate, miss[ed] important patient details during patient sessions, and [was unable] to devote herself to patient care." SAC ¶ 15(c). On or around July 16, 2022, Plaintiff submitted a note from her healthcare provider "outlining that [Plaintiff] was diagnosed with migraine headaches, and has photophobia and phonophobia during her migraines, caused by the loud music and discomforting lights used throughout the facility." *Id.* ¶ 16(a). As a result of these migraines, Plaintiff alleges that she "found it harder to concentrate on patient treatment, [felt] drawn away from her patients, and purposefully created small breaks during patients' treatment sessions to regain her well-being and composure." *Id.* ¶ 17(a). Plaintiff repeatedly alleges throughout her SAC that these migraines impacted her ability to concentrate, provide patient care, and sleep at night. *See id.* ¶¶ 15(d), 17(b)–(c), 18(a), 19(b), 20(b), 22(b), 27(a), 28(a). The Court finds these allegations sufficient to allege a negative interference with her work. *See Cabrales*, 2019 WL 12374001, at *14 (denying summary judgment for employer on a FEHA discrimination claim where plaintiff alleged that her migraines "made it difficult for her to concentrate, think, and interact with others" because "[c]oncentrating, thinking, and interacting with others are each considered major life activities," and the plaintiff did not "need to be totally unable to work or engage in other major life activities for her alleged migraines to limit major life activities") (citing Cal. Code Regs. § 11065(l)(1)).

Similarly, regarding her allegations surrounding pain in her wrists, arms, shoulders, and neck, Plaintiff now sufficiently alleges that her pain actually limited her ability to work. *See Sanchez v. Walmart Inc.*, No. 23-2352-DMG (SHKx), 2025 WL 3050066, at *2 (C.D. Cal. July 30, 2025) ("Courts have generally held that pain 'must actually limit the employee's ability to work' in order to qualify as a disability under FEHA." (quoting *Leatherbury*, 911 F. Supp. 2d at 880)). Plaintiff alleges that the pain prevented her "from providing proper spinal manipulations and adjustments to her patients," which at one point became so "excruciating" that she "was approved to go home early for the day" because "it was becoming increasingly evident that [Plaintiff] could not perform her job duties."

24-CV-2071 JLS (DEB)

SAC ¶¶ 11(a), 23(b).  Plaintiff alleges that she was forced to "continuously modif[y] the way she adjusted her patients" and her patients "visibly saw her pain and discomfort" resulting in patient complaints "that they were not being adjusted properly."  *Id.* ¶ 24(a).  Due to these complaints, Plaintiff alleges that she "purposefully created informal breaks during treatment sessions to regain her well-being and composure, in hopes she could provide proper treatment, as she used to."  *Id.* ¶ 24(b).

The Court recognizes that Plaintiff also pleads that, until her wrongful termination, Plaintiff "worked diligently in her position and performed her job duties in an exemplary matter."  *Id.* ¶ 10(a).  At the pleading stage, the Court finds that Plaintiff's other allegations are sufficient to allege that her pain limited her ability to perform her job.  *See Achal v. Gate Gourmet, Inc.*, 144 F. Supp. 3d 781, 798 (N.D. Cal. 2015) (finding pleading sufficient where plaintiff alleged that his injury caused "lifting and bending restrictions that impaired his ability to work"); *cf. Smith v. Constellation Brands, Inc.*, No. C 16-04101 WHA, 2017 WL 264064, at *3 (N.D. Cal. Jan. 20, 2017) (finding allegations of pain insufficient where plaintiff claimed head and neck mobility issues but did not explain how the condition made her unable to complete her job); *Phomthevy v. Winco Holdings, Inc.*, No. 19-CV-41-KJM-CKD, 2020 WL 6044040, at *2 (E.D. Cal. Oct. 13, 2020) (finding allegations of pain insufficient as mere recitations of the elements where plaintiff only listed difficulties "sleeping, getting out of bed, walking, sitting, lifting, bending[,] and moving" but did not explain how these limited plaintiff's work activities); *Goode v. Maximus Human Servs., Inc.*, No. SACV 16-1254-JVS (DFMx), 2016 WL 11811972, at *3 (C.D. Cal. Oct. 3, 2016) (finding no disability where plaintiff "did not allege any specific limitations on her ability to work").  Therefore, Defendants' Motion is **DENIED** as to Plaintiff's allegations concerning migraines and pain in her wrists, arms, shoulders, and neck.

Further, regarding any allegations concerning "excessive urination," the Court concludes that Plaintiff has not sufficiently alleged that the "excessive urination" caused by the fumigation is a disability under FEHA because she did not demonstrate how it impacted a major life activity.  *See Jaco v. Winco Holdings, Inc.*, No. 18-CV-301-DAD-

24-CV-2071 JLS (DEB)

EPG, 2019 WL 1438069, at *8 (E.D. Cal. Mar. 31, 2019) (granting a motion to dismiss as to allegations concerning an urgent need to urinate because the plaintiff did not allege how frequently she suffered from this need, how severe the condition was, the duration of the condition, any long term impact, or how it impacted a major life activity). Therefore, Defendants' Motion is **GRANTED** regarding Plaintiff's allegations about excessive urination. *See* SAC ¶ 20(b).

In sum, Plaintiff's allegations concerning migraines and pain in her wrists, arms, shoulders, and neck sufficiently allege a disability under FEHA for purposes of her First, Second, Fourth, Fifth, Sixth, and Ninth causes of action.

## II.    Harassment Claim

Defendants next argue that Plaintiff fails to sufficiently plead her Second cause of action for harassment. Mot. at 24. Defendants argue that Plaintiff's allegations all constitute "personnel management actions" that were not done for the secondary purpose of "communicating a hostile message," and therefore, cannot constitute harassment under FEHA. *Id.* at 24–25 (first citing *Reno v. Baird*, 18 Cal. 4th 640, 646–47 (1998); then citing *Wexler v. Jensen Pharms., Inc.*, No. CV 15-3518-AB (AJWx), 2015 WL 6159101, at *5 (C.D. Cal. Oct. 20, 2015)). Defendants argue that Plaintiff's allegations supporting her harassment claim are: "write ups, written counseling, and warnings (SAC ¶¶ 14, 18, 19, 26, 27, 35, 36); scheduling decisions (*id.* ¶ 18); accommodation decisions (*id.* ¶¶ 15, 17, 22, 23, 30); equipment decisions (*id.* ¶ 24); removal from position or suspension decisions (*id.* ¶¶ 38, 43); and replacement of position (*id.* ¶¶ 40, 42)." Mot. at 25. Defendants conclude that these are "quintessential personnel actions." *Id.*

Plaintiff argues that the alleged harassment incidents include: "(1) issuing [Plaintiff] questionable warnings (SAC ¶¶ 14, 19, 26, 36, 28); (2) declining to address her complaints because Defendant[s] did not want to provide her requested accommodations ([*id.*] ¶ 17); and (3) terminat[ing] her employment ([*id.*] ¶¶ 38, 40, 42, 43)." Opp'n at 20–21. Plaintiff does not address Defendants' argument that these decisions constitute "personnel management actions." *See* Opp'n.

8

24-CV-2071 JLS (DEB)

"To establish a claim for harassment, a plaintiff must demonstrate that: (1) she is a member of a protected group; (2) she was subjected to harassment because she belonged to this group; and (3) the alleged harassment was so severe that it created a hostile work environment." *Lawler v. Montblanc N. Am., LLC*, 704 F.3d 1235, 1244 (9th Cir. 2013) (citation omitted). "Unlike discrimination claims, harassment 'consists of actions outside the scope of job duties which are not of a type necessary to business and personnel management.'" *Id.* (first citing *Reno*, 18 Cal. 4th at 646–47; then citing *Janken v. GM Hughes Elecs.*, 46 Cal. App. 4th 55, 64 (1996)). For example, "commonly necessary personnel management actions such as hiring and firing, job or project assignments, office or work station assignments, promotion or demotion, performance evaluations, the provision of support, the assignment or nonassignment of supervisory functions, . . . deciding who will be laid off, and the like, do not come within the meaning of harassment." *Reno*, 18 Cal. 4th at 646–47. "[H]arassment consists of conduct outside the scope of necessary job performance, conduct presumably engaged in for personal gratification, because of meanness or bigotry, or for other personal motives." *Id.* at 645–46. Personnel management actions can be actionable if the decision has "a secondary effect of communicating a hostile message" and where the "actions establish a *widespread* pattern of bias." *Wexler*, 2015 WL 6159101, at *6 (citing *Roby v. McKesson Corp.*, 47 Cal. 4th 686, 709 (2009)).

Judge Anello previously concluded that Plaintiff's allegations were not actionable because they fell "within the scope of routine management activities," were only "occasional, isolated, sporadic, or trivial," were not "severe enough to create a work environment that qualifies as hostile or abusive," and were not severe enough to "interfere with the reasonable employee's work performance and seriously affect the psychological well-being of a reasonable employee." Order at 3. The Court comes to the same conclusion concerning Plaintiff's SAC.

///

///

24-CV-2071 JLS (DEB)

As Plaintiff summarized in her Opposition, Plaintiff's allegations of harassment include the issuance of "questionable warnings," "declining to address her complaints" surrounding accommodations, and terminating her employment.  Opp'n at 20–21.  The Court concludes that these are routine management activities, and Plaintiff has failed to allege that these were done with the "secondary effect of communicating a hostile message" or part of a "*widespread* pattern of bias."  *See Wexler*, 2015 WL 6159101, at *6.  Nor has Plaintiff alleged that she "was subject to harassment that was so objectively severe or pervasive as to alter the conditions of her employment and create an abusive work environment."  *Gunderson v. Potter Handy, LLP*, No. 25-CV-634-VC, 2025 WL 2945696, at *1 (N.D. Cal. Oct. 17, 2025).  Further, any conclusory allegations by Plaintiff that these personnel management decisions were "intended to harass and single-out" Plaintiff are insufficient to allege harassment.  SAC ¶ 14(c); *see Ventura v. IQVIA, Inc.*, No. 25-CV-9163-RS, 2026 WL 84530, at *3 (N.D. Cal. Jan. 12, 2026) ("[T]he court is not bound to accept, without more, Plaintiff's legally conclusive allegations that this conduct was 'harassing' and in furtherance of 'pervasive harassment.'").  Therefore, Defendants' Motion is **GRANTED** as to Plaintiff's harassment claim.  Plaintiff cannot rely on alleged harassment for her remaining causes of action, e.g., cause of action Six, for failure to take all reasonable steps to prevent harassment.

### III.    Intentional Infliction of Emotional Distress

Defendants next argue that Plaintiff's IIED claim (cause of action Ten) fails to state a claim because none of the conduct alleged is so "outrageous or extreme it exceeds all bounds of that usually tolerated in a civilized community."  Mot. at 29–30 (internal quotation marks and citation omitted).  Defendants also argue that Plaintiff has failed to allege severe emotional distress and that the IIED claim is preempted by the California Workers' Compensation Act.  *Id.* at 31–33.  Judge Anello previously dismissed Plaintiff's IIED claim—finding that Plaintiff failed "to allege that the conduct at issue was extreme or outrageous or that she in fact suffered serious or severe emotional distress."  Order at 4.  The Court likewise concludes that Plaintiff's allegations are insufficient.

Under California law, to state a claim for IIED, Plaintiff must allege:

> (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by [the] defendant's outrageous conduct.

*Sabow v. United States*, 93 F.3d 1445, 1454 (9th Cir. 1996) (citing *Christensen v. Superior Ct.*, 54 Cal. 3d 868, 903 (1991)).  "Conduct to be outrageous must be so extreme as to exceed all bounds of that usually tolerated in a civilized community." *Miller v. Fortune Com. Corp.*, 223 Cal. Rptr. 3d 133, 143 (Ct. App. 2017).  There is no bright line rule for when conduct qualifies as outrageous, and it is typically a question of fact for the jury. *So v. Shin*, 212 Cal. App. 4th 652, 671 (2013).  "A court may dismiss such claims as a matter of law if the conduct alleged is insufficiently outrageous, particularly where the conduct alleged amounts to 'mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.'"  *Morse v. Cnty. of Merced*, No. 16-cv-142-DAD-SKO, 2016 WL 3254034, at *13 (E.D. Cal. June 13, 2016) (quoting *Hughes v. Pair*, 46 Cal. 4th 1035, 1051 (2009)).

In the context of FEHA, "[a] plaintiff may pursue a claim for intentional infliction of emotional distress in the employment context where the conduct at issue violates FEHA *and also satisfies the elements of the claim*." *Cornell v. Berkeley Tennis Club*, 18 Cal. App. 5th 908, 945–46 (2017) (citation omitted).  "A simple pleading of personnel management activity is insufficient to support a claim of intentional infliction of emotional distress, even if improper motivation is alleged." *Janken*, 46 Cal. App. 4th at 80 (dismissing IIED claim where allegations only involved criticism of work performance and management of personnel).

The Court agrees with Defendants that Plaintiff has failed to plead extreme or outrageous conduct or severe emotional distress.  As discussed above, many if not all of the allegations making up Plaintiff's harassment claim, and her IIED claim, can be considered personnel management activity.  Further, none of the conduct alleged can "be

24-CV-2071 JLS (DEB)

characterized as exceeding all bounds of that tolerated in a civilized community." *Lawler*, 704 F.3d at 1245 ("While [the manager] may have inconsiderately and insensitively communicated his dissatisfaction of [plaintiff's] managerial performance, this is not conduct from which California tort law protects employees."); *see also Schneider v. TRW, Inc.*, 938 F.2d 986, 992 (9th Cir. 1991) (affirming summary judgment dismissal of IIED claim where allegations included a supervisor screaming and yelling "in the process of criticizing [plaintiff's] performance," threatening "to throw [plaintiff] out of the department," and making gestures plaintiff interpreted as threatening); *Padro*, 2025 WL 4058222, at *6–7 (dismissing IIED claim where the underlying allegation was firing based on disability discrimination); *Filipek v. Byram Healthcare Ctrs., Inc.*, No. SACV 22-254-CJC(ADSx), 2022 WL 20401327, at *6 (C.D. Cal. Oct. 18, 2022) ("Both state and federal courts have held that '[t]erminating an employee for improper or discriminatory reasons, like many other adverse personnel management decisions, is insufficiently extreme or outrageous to give rise to a claim for intentional infliction of emotional distress.'") (quoting *Walker v. Boeing Corp.*, 218 F. Supp. 2d 1177, 1190 (C.D. Cal. 2002)); *Kasperzyk v. Shelter Sec. Servs., Inc.*, No. C-13-3358 EMC/TEH, 2015 WL 1348503, at *12 (N.D. Cal. Mar. 25, 2015) ("At least in the absence of some extraordinary circumstances, a claim of employment discrimination does not, in itself, give rise to an IIED claim.").

Further, Plaintiff's alleged emotional distress—feeling "shocked, confused, and dejected because she was suddenly terminated," SAC ¶ 43(b)—are insufficient to constitute "emotional distress of such substantial quality or enduring quality that no reasonable [person] in civilized society should be expected to endure it." *Hughes*, 46 Cal. 4th at 1051; *see also Lawler*, 704 F.3d at 1246 (affirming summary judgment dismissing IIED claim where plaintiff's allegations of severe emotional distress included "[a]nxiety, sleeplessness, upset stomach, [and] sometimes muscle twitches").  There is no evidence that Plaintiff "suffered from anything other than typical psychological effects following termination." *Desoto v. DOT Foods, Inc.*, No. 24-CV-1140-WBS-CSK, 2025 WL 3761815, at *5 (E.D. Cal. Dec. 29, 2025).

24-CV-2071 JLS (DEB)

Therefore, Defendants' Motion as to Plaintiff's IIED claim (cause of action Ten) is **GRANTED**.

## IV.   Leave to Amend

The final consideration is whether Plaintiff should again be granted leave to amend. Leave to amend should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). But while the rule should be interpreted liberally, leave should not be granted automatically. *Jackson v. Bank of Haw.*, 902 F.2d 1385, 1387 (9th Cir. 1990). In determining whether to grant leave to amend, trial courts should consider various factors, including bad faith, undue delay, prejudice to the opposing party, futility of amendment, and whether the party has previously amended. *Foman v. Davis*, 371 U.S. 178, 182 (1962).

Applying the *Foman* factors here, the Court declines to grant Plaintiff leave to amend. The Court finds that "it is clear that granting leave to amend would [be] futile." *Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc.*, 368 F.3d 1053, 1061 (9th Cir. 2004). Thus, Plaintiff's causes of action Two (harassment) and Ten (IIED) are dismissed without leave to amend.

## CONCLUSION

For the reasons above, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion for Partial Dismissal of Plaintiff's Second Amended Complaint ("Mot.," ECF No. 32). Defendants **SHALL** file an answer within thirty (30) days of the electronic docketing of this Order.

**IT IS SO ORDERED.**

Dated:  February 23, 2026

Hon. Janis L. Sammartino
United States District Judge

13

24-CV-2071 JLS (DEB)